At issue in this case is whether the board of selectmen of West Bridgewater (board) violated the open meeting law, G. L. c. 30A, §§ 18 - 25, when it discussed the professional competence of nonunion municipal employees in executive sessions without first discussing those matters in open session as required under District Attorney for the N. Dist. v. School Comm. of Wayland, 455 Mass. 561 (2009) (Wayland ). Acting on a complaint filed by a private citizen, the Attorney General concluded that the board had violated the open meeting law on three occasions. The board then commenced this action pursuant to G. L. c. 30A, § 23(d ), seeking certiorari review under G. L. c. 249, § 4. On cross motions for judgment on the pleadings, a judge of the Superior Court dismissed the board's complaint and affirmed the decision of the Attorney General. The board has appealed from that judgment.
Background. The following facts are taken from the administrative record. The three executive session discussions that are the subject of this appeal occurred on January 14, 2015, March 4, 2015, and April 1, 2015. During each of these executive sessions, the board discussed the professional competence of nonunion municipal employees in connection with negotiating the employees' contracts. There is no dispute that the board did not conduct annual performance evaluations or otherwise discuss the employees' professional competence in open sessions prior to the three executive sessions in question.[2]
On January 14, 2015, the board met with the police chief to discuss renewing his contract. The minutes from that meeting state that the board convened an executive session "[p]ursuant to MGL Chapter 30A, Section 21(a) Exception 2 to conduct contract negotiations with non union personnel." Prior to the session, the board had sent a letter to the chief describing "actions and changes that would help improve the Police Department and that would serve as a measure of renewing" his contract. During the session, the board asked the chief to discuss his progress and the steps he had taken to improve the department. The board finalized its negotiations with the chief during two subsequent executive sessions held on March 4, 2015, and April 16, 2015.
On March 4, 2015, and April 1, 2015, the board met with various other nonunion employees during executive sessions. Like the session held on January 14, the minutes indicate that these two sessions were convened "[p]ursuant to MGL Chapter 30A, Section 21(a) Exception 2 to conduct contract negotiations with non-union personnel." On March 4, the board met with the town accountant, the elder services director, the police chief, and the forestry and parks superintendent. On April 1, the board met with the highway and vehicle maintenance superintendent, the assistant vehicle maintenance superintendent, and a police lieutenant. Each employee was asked a series of questions about their positions. The board asked the employees to describe their work schedules and the manner in which they accrue compensatory time. The employees were also asked to provide an overview of their departments and to highlight their projects, accomplishments, and challenges.[3] The board then deliberated on what it describes as "contract presentations" by the employees and voted to increase their salaries. The employment contracts were executed in open session on June 17, 2015, after the annual town budget had been approved.
On August 21, 2015, a town resident filed a complaint with the Attorney General alleging that the board's discussion in executive session of nonunion employees' professional competence violated the open meeting law. The Attorney General opened an investigation and found that, in the context of the negotiations, the board solicited "contract presentations" in which it identified performance issues for certain employees and asked them to respond to those areas of concern. The Attorney General concluded that violations had occurred on January 14, 2015, March 4, 2015, and April 1, 2015. Relying on Wayland, the Attorney General determined that the board's characterization of the discussions as "contract presentations" "did not transform the[m] ... into something other than a performance review." The Attorney General then ordered the board to comply with the open meeting law in the future and to review a training video on executive sessions.[4]
In bringing this action, the board asserts that it properly discussed the employees' professional competence in executive session because the sessions were conducted pursuant to G. L. c. 30A, § 21(a )(2) ( § 21 [a ][2] ), in connection with contract negotiations. Because § 21(a )(2) does not explicitly require that professional competence be discussed in open session, contrast G. L. c. 30A, § 21(a )(1) ( § 21 [a ][1] ), the board argued that the Attorney General erred in determining that it had violated the open meeting law.[5] A judge of the Superior Court rejected the board's argument that professional competence must be discussed in open session only where an executive session is called pursuant to § 21(a )(1), and held that the board's interpretation of G. L. c. 30A, § 21(a ), is inconsistent with the holding in Wayland. The judge deferred to the Attorney General's finding that the board effectively conducted performance evaluations of nonunion employees during executive sessions without first discussing professional competence in an open session, and he concluded that the Attorney General did not err.
Discussion. "Our function in reviewing an appeal of a decision in a certiorari proceeding is a limited one." Durbin v. Board of Selectmen of Kingston, 62 Mass. App. Ct. 1, 5 (2004). We review the administrative record only to determine (1) whether the Superior Court judge correctly ruled that the Attorney General committed no error of law that adversely affected the board's legal rights, and (2) whether the Attorney General's determination that the board violated the open meeting law is supported by substantial evidence. Id. at 6.
As previously noted, in affirming the decision of the Attorney General, the judge concluded that the board had violated the open meeting law because it did not first discuss professional competence in an open session as required under Wayland. In Wayland, 455 Mass. at 569-570, the school committee exchanged private electronic mail messages concerning a draft performance evaluation of the superintendent. It then discussed the draft evaluation in two executive sessions. Id. at 566-567. The Supreme Judicial Court held that this process "violated the letter and spirit of the open meeting law." Id. at 570. As the Attorney General notes in her brief, the Supreme Judicial Court established a bright-line rule in Wayland. If a public body like the board intends to discuss an employee's professional competence-even for purposes of contract negotiations under § 21(a )(2) -it must first conduct performance evaluations or otherwise discuss that competence in an open session. See id. at 568. Thereafter, the board may convene an executive session to determine how such evaluations of the employee will be used in the negotiations. Ibid.
Here, there is no dispute that the board failed to conduct performance evaluations or to publicly discuss the professional competence of the various employees in question. As a result, we, like the judge, conclude that the Attorney General correctly determined that the board violated the open meeting law. See G. L. c. 30A, § 23(a ), inserted by St. 2009, c. 28, § 18 ("[T]he attorney general shall interpret and enforce the open meeting law"); G. L. c. 30A, § 25(b ), inserted by St. 2009, c. 28, § 18 ("The attorney general shall have the authority to interpret the open meeting law and to issue written letter rulings"). See also Boelter v. Board of Selectmen of Wayland, 479 Mass. 233, 242 (2018) (Attorney General's interpretation of open meeting law "is entitled to substantial deference, unless it is inconsistent with the plain language of the statute").
We also agree with the judge that the board's attempt to distinguish its conduct from that at issue in Wayland is not persuasive; the board interprets Wayland too narrowly. It matters not that the school committee in Wayland did not discuss negotiations or strategy in its executive sessions. The point the Supreme Judicial Court made in Wayland is that any discussion of professional competence must first take place in an open session. See Wayland, supra at 568 ("While professional competence must first be discussed in an open session, how that evaluation will factor into a contract or salary negotiation strategy may be suitable discussion for an executive session" [emphasis supplied] ); ibid. ("While a school committee's deliberation of the superintendent's professional competence must take place in an open session, written performance evaluations, whether draft or final, are not a public record, and are not required to be made available to the public" [emphasis supplied] ); id. at 572 n.8 ("If, however, the school committee had met as required by law in an open meeting to discuss the superintendent's professional competence, it then could have moved into a proper executive session to draft the evaluation" [emphasis supplied] ).
The board is correct that the open meeting law was amended significantly after the Supreme Judicial Court decided Wayland. However, those amendments did not materially change the portions of the law upon which Wayland is based. To the contrary, the amendments "broadened the open meeting law's definition of 'deliberation' " and clarified the manner in which public bodies may conduct performance evaluations. Boelter v. Board of Selectmen of Wayland, supra at 241. Nothing in the amendments to the open meeting law changes the Supreme Judicial Court's consistent interpretation that "[t]he open meeting law was intended to ensure that the public is able to see for themselves how [decisions to award contract extensions or raises] are made," id. at 243, in that the Supreme Judicial Court continues to interpret the open meeting law to require that professional competence first be discussed in an open session. See id. at 242-243 (distribution of board members' opinions regarding town administrator's performance "to the quorum, prior to the [open] meeting, was ... a violation of the open meeting law").
Conclusion. We reject the board's argument that the Attorney General committed legal error in determining that the board violated the open meeting law, and we affirm the judgment of the Superior Court.
So ordered.
Affirmed

On November 19, 2014, and February 4, 2015, the board discussed whether to conduct performance evaluations for nonunion employees and, if so, how those evaluations would be used to determine salary increases. However, no performance evaluations were conducted.

On March 4, 2015, the town accountant presented "documentation chronicling her accomplishments," "discussed her increase in duties," and requested a salary increase. The elder services director discussed her accomplishments and also requested a salary increase. The forestry and parks superintendent "discussed his daily meetings with his employees and his time spent working on grants and facilitating summer concert sponsorships," and requested a salary increase. Similar discussions were conducted on April 1, 2015, with the highway and vehicle maintenance superintendent, the assistant vehicle maintenance superintendent, and the police lieutenant.

On January 6, 2016, the members of the board returned certificates of compliance showing that they had reviewed the video.

In pertinent part, § 21(a )(1), as appearing in St. 2009, c. 28, § 18, provides that a public body may convene in an "executive session" that is closed to the public in order to "discuss the reputation, character, physical condition or mental health, rather than professional competence, of an individual" (emphasis supplied). Pursuant to § 21(a )(2), as appearing in St. 2009, c. 28, § 18, a public body may convene an executive session in order to "conduct ... contract negotiations with nonunion personnel."